**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY GRANT CONSTRUCTION; and MA-CHIS LOWER CREEK INDIAN TRIBE ENTERPRISES, INC.<br><br>     **Plaintiffs,**<br><br>  v.<br><br>KAREN G. MILLS, Administrator U.S. Small Business Administration.<br><br>     **Defendant.** | Civil Action No. 12-00837 (BJR)<br><br>**MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

  This matter is before the Court on Plaintiffs' motion for summary judgment. The plaintiffs, Larry Grant Construction ("LGC") and Ma-Chis Lower Creek Indian Tribe Enterprises ("LCITE"), seek review of a decision of the Small Business Administration ("SBA") that LGC is not a small business. Specifically, Plaintiffs claim the SBA acted arbitrarily and capriciously, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), by miscalculating their combined average annual receipts. The Court has carefully considered the filings, the applicable law, and the entire record. For the reasons that follow, Plaintiffs' motion for summary judgment is GRANTED.

**I. BACKGROUND**

  Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), authorizes the SBA to enter into a procurement contract with the federal government and to subcontract its performance to a "socially and economically disadvantaged small business." *Id.* § 637(a)(1)(A)–(B). The SBA duly administers the 8(a) Business Development Program ("8(a) program") to implement Section

8(a) of the Act.  48 C.F.R. § 19.800(d).  Because the SBA may award a subcontract to an 8(a) program participant on a sole source, i.e., noncompetitive, basis, 15 U.S.C. § 637(a)(16); 48 C.F.R. § 19.800(b), admission into the program is highly desirable.  A business seeking to participate in the 8(a) program must prove, among other things, that it is owned by one or more "socially and economically disadvantaged individuals" and that it is "small."  13 C.F.R. § 124.101.  The latter requirement is the centerpiece of this case.

To determine whether a business is "small," the SBA compares the size of the business to the "size standards" published in 13 C.F.R. § 121.201.  That regulation lists a maximum size, measured in either annual receipts or number of employees, for each category of business, as defined by North American Industrial Classification System (NAICS) code.  Annual receipts are averaged over the three fiscal years preceding the application, *id.* § 121.104(c)(1), and the number of employees is averaged over the preceding twelve months, *id.* § 121.106(b)(1).  In calculating a business's size, the SBA considers not only the business's own employees and annual receipts, but also those of any affiliated companies.  "Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both."  *Id.* § 121.103.  Each affiliated business is treated as though it had the receipts and employees of all the affiliates combined.  *Id.* §§ 121.104(d)(1) (annual receipts combined); 121.106(b)(4)(i) (number of employees combined).

Plaintiff LGC is a construction company and sole proprietorship owned by Larry Grant.  Grant is a member of the Ma-Chis Lower Creek Indian Tribe of Alabama ("Tribe"), which owns plaintiff LCITE, a "company with multiple affiliates and divisions in the General Contracting business."  Administrative Record (A.R.) at 2-29.  LCITE's revenues far outstrip those of LGC.  In 2009, for example, LCITE reported gross receipts of about $32.7 million on its federal income

tax return, *id.* at 10-64, while LGC reported about $513,000 on Grant's individual tax return, *id.* at 17-17.[1] Both LGC and LCITE fall under NAICS code 236220, Commercial and Institutional Business Construction, *id.* at 2-27, 29, and must therefore maintain average annual receipts at or below $33.5 million in order to qualify as small businesses, 13 C.F.R. § 121.201. At the time of the following events, LCITE was already so qualified and was a participant in the 8(a) program. A.R. at 2-29.

In August 2011, LGC applied to join LCITE as a participant in the 8(a) program. Tipped off, apparently, by "a protest alleging affiliation" between the two companies, A.R. at 1-15, the SBA began a review of LGC's size. The SBA first determined LGC was affiliated with a real estate company jointly owned by Grant and his wife; that determination is not at issue here. *Id.* at 2-29. The SBA also found, however, that for the year ending December 31, 2010, "60% of [LGC's] revenues came from subcontracts" with a joint venture in which LCITE held a 51% stake, and "10% came from subcontracts" directly with LCITE. *Id.* at 2-30. "For 2011, revenues through October 31 reflect that 85.4% of current revenues are from ... LCITE, while an additional 9.4% is from ... a company also showing Ma-Chis on the invoice." *Id.* Although the SBA identified no revenue from LCITE in the other two years it reviewed, 2008 and 2009, *id.*, and despite Grant's protest that these were the first instances he had bid for subcontracts with LCITE since he began operating LGC 30 years ago, *id.* at 18-10, the SBA determined LGC was "economically dependent on ... LCITE ... and is therefore affiliated with it." *Id.* at 2-30.

Having determined that LGC and LCITE were affiliated, the SBA requested LCITE's financial records for the relevant fiscal years — 2008, 2009, and 2010 — in order to add its

---

[1] A sole proprietorship like LGC is generally "[d]isregarded as an entity separate from its owner," 18 C.F.R. § 301.7701-3(b)(1)(ii); income from the business is therefore reported on the owner's individual tax return.

average annual receipts to that of LGC.  After some initial resistance,[2] James Wright, Chief of the Tribe and Chief Executive Officer of LCITE, submitted LCITE's federal tax returns for 2008 and 2009.  *Id.* at 1-17.  LCITE's chief financial officer separately submitted a draft financial statement for 2010 because the tax return for that year was not yet complete.  *Id.* at 1-2, 1-5.

The SBA encountered immediate difficulty interpreting LCITE's 2010 draft financial statement.  For the purpose of determining the size of a partner in a joint venture, the SBA assigns the partner a share of the joint venture's receipts proportional to that partner's stake in the venture, 13 C.F.R. § 121.103(h)(5); LCITE owned a 51% stake in several joint ventures and listed revenue from those ventures on its draft statement, *id.* at 1-40.  The SBA could not tell from the draft statement, however, whether the revenue stated for each joint venture was 100% of the venture's revenue or the 51% that should be allocated to LCITE.  Defendant's Opposition to Plaintiffs' Motion for Summary Judgment, Declaratory and Injunctive Relief ("Def.'s Opp.") at 14, Dkt. No. 22; *see also* A.R. at 1-31 (draft financial statement).  In other words, the SBA could not tell whether the revenue from LCITE's joint ventures had already been discounted, as it needed to be, by LCITE's stake in the venture.  Because the joint ventures did not file their own separate tax returns, the SBA could not simply check the figures in LCITE's draft statement against another source.  The SBA therefore resorted to guesswork: An analyst prepared several worksheets assuming the joint venture revenues had already been discounted, A.R. at 2-6 to 9, 2-11 to 18, while a reviewing attorney prepared a worksheet assuming that the revenues had not been discounted, A.R. at 2-10.  Although the record is not entirely clear, *see id.* at 2-32, the SBA apparently adopted one of the analyst's calculations, along with its underlying assumption that

---

[2] Chief Wright was apparently perplexed by the SBA's request for the financial records of LCITE, whose own status in the 8(a) program was not under review.  In response to the SBA's initial request, he wrote:  "I am sorry but we do not give our tax returns to people outside the normal operation of our business.  Larry Grant is not now, nor has he ever been affiliated with ... LCITE." A.R. at 18-15.  After the SBA explained the reason for its request, Chief Wright complied.  *See id.* at 1-17 to 18.

the joint venture revenues stated on LCITE's draft financial statement had already discounted; the reviewing attorney's contrary assumption was "not part of the financial analysis." Def.'s Opp. at 14. On this basis the SBA determined "the annual receipts of [LGC] and its affiliates ... exceeds the applicable size standard" of $33.5 million. A.R. at 2-32.

In December 2011, LGC and LCITE each filed a separate appeal to the SBA's Office of Hearing and Appeals (OHA). With its appeal LCITE included an affidavit from Chief Wright declaring, among other things, that its 2010 draft financial statement "included the total revenue from the joint ventures LCITE participated in ..., including the proportionate share of revenue from LCITE's joint ventures that is revenue of LCITE's joint venture partners and not of LCITE." A.R. at 2-46. Without the joint venture revenue improperly attributed to it, LCITE argued, its average annual receipts, even combined with LGC's, fell below the $33.5 million threshold for being deemed a "small business." *Id*. at 2-36 to 37. LCITE also argued, as did LGC in its appeal, that the two companies were not affiliated. *Id.* at 2-42 (LCITE's appeal), 2-62 (LGC's appeal).

In March 2012, the OHA dismissed LCITE's appeal for lack of administrative standing. The OHA reasoned that the adverse size determination pertained only to LGC and therefore had "no apparent impact or consequence to [LCITE]." *Id.* at 3-49. In a separate decision issued one day later, the OHA denied LGC's appeal on the merits. The OHA determined that LGC and LCITE indeed "share an identity of interest through economic dependence, thereby creating affiliation between the concerns," *id.* at 3-63; in calculating their combined income, moreover, the SBA had taken "pains to include only [LCITE]'s proportionate share of the joint venture receipts." *Id.* at 3-64. Because it found no error in the determination of affiliation or in the calculation of combined average annual receipts, the OHA issued a final decision affirming that

LGC "is not a small business." *Id.* at 3-60.

In May 2012, LGC and LCITE filed suit together to set aside the decision of the SBA. In their complaint Plaintiffs alleged, among other things, that the SBA miscalculated their combined average annual receipts, incorrectly held them affiliated, and improperly dismissed LCITE's administrative appeal for lack of standing, all in violation of the APA, 2 U.S.C. § 706(2)(A). Complaint, Dkt. No. 1, at 8–11. Plaintiffs requested declaratory and injunctive relief along with attorney's fees and costs. *Id.* at 11-12. In November 2012, Plaintiffs moved for summary judgment.

## II.  DISCUSSION

Plaintiffs present four arguments in their motion for summary judgment:  (1) the SBA miscalculated the LCITE's average annual receipts by failing to discount the receipts of its joint ventures by LCITE's ownership share; (2) the SBA improperly considered LCITE's 2010 draft financial statement; (3) the SBA incorrectly held Plaintiffs affiliated; and (4) the SBA improperly dismissed LCITE's administrative appeal for lack of standing. Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment and for Declaratory and Injunctive Relief ("Pls' Mem.") at 1–2, Dkt. No. 17. Because, as explained below, the Court agrees with Plaintiffs' first argument, it does not reach their second or third. Even if the SBA correctly determined that Plaintiffs were affiliated and properly considered LCITE's 2010 draft financial statement, the SBA acted arbitrarily and capriciously, in violation of the APA, by assuming the joint venture revenue in that draft statement had already been discounted by LCITE's ownership share.

The Court also does not reach Plaintiffs' fourth argument. Because the Court will vacate

the SBA's determination that LGC is a not small business, the question of LCITE's standing to appeal that determination before the OHA is moot. Nor does the OHA's holding that LCITE lacked administrative standing call into question the Article III standing of the plaintiffs here, a jurisdictional question the Court must consider *sua sponte*. *Lee's Summit, MO v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000) ("When there is doubt about a party's constitutional standing, the court must resolve the doubt, *sua sponte* if need be"). LGC, against which the SBA rendered an adverse final decision, undoubtedly has Article III standing; the presence of a single plaintiff with standing is sufficient to keep a "case[]" or "controvers[y]," U.S. CONST. art. III, § 2, before the Court. *Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010) ("[O]nce one plaintiff has standing, there is 'no occasion to decide the standing of the other [plaintiffs]'" (quoting *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682 (1977)); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 783 F.2d 237, 246 n.12 (D.C. Cir. 1986) (similar). There is no need, therefore, to decide either LCITE's administrative standing before the OHA or its Article III standing here.

### A.     Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where, as here, the plaintiff seeks judicial "review of agency action under the APA,… [t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted). The APA requires the Court to set aside agency action that is "arbitrary [or] capricious," 5 U.S.C. § 706(2)(A); while the "[C]ourt is not to substitute its judgment for that of the agency," *Motor*

*Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), the Court must satisfy itself that the agency "considered the relevant factors and explained the facts and policy concerns on which it relied, and [that] those facts have some basis in the record." *Nat'l Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir. 1988). "The SBA's decision is 'arbitrary [and] capricious,'" therefore, "if the SBA has entirely failed to consider an important aspect of the problem or has offered an explanation for its decision that runs counter to the evidence before it." *DSE, Inc. v. United States*, 3 F. Supp. 2d 1464, 1467 (D.D.C. 1998).

## B.      Analysis

Plaintiffs argue the SBA acted arbitrarily and capriciously "by using the wrong [joint venture] dollar figures when calculating the three-year average of Plaintiffs' receipts." Pls' Mem. at 8–9. In one worksheet titled "Calculation Worksheet LGC Revised per Legal," A.R. at 2-10, an SBA attorney assumed that the joint venture receipts reported on LCITE's 2010 draft financial statement had not been discounted to 51%, its ownership share in those ventures; the attorney therefore multiplied the reported joint venture receipts by 51%. In other worksheets, however, a SBA analyst made the contrary assumption and used 100% of the reported joint venture receipts. The reason for these differing assumptions, the Plaintiffs wryly note, is "not clear" from the record, Pls' Mem. at 9–10, but "all that the [SBA] needed to do to obtain the correct answer was to phone or email LCITE or LCITE's accounting firm ... and ask what [the draft statement] numbers reflected," Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Pls' Reply") at 4, Dkt. No. 23. Had the SBA done this, Plaintiffs argue, it would have discovered that the SBA attorney was correct, *viz.*, the joint venture figures on LCITE's draft financial statement had not been discounted. *Id.*

Properly calculated, Plaintiffs argue, their "combined three-year average of receipts does not exceed the small business size standard of $33.5 million." Pls' Mem. at 12.

The SBA acknowledges the differing assumptions employed by its attorney and analyst, and, apparently, that the analyst's assumption was used in the final calculation. Def.'s Opp. at 14 ("[The] separate review by the attorney [was] not part of the financial analysis"). The SBA insists, nevertheless, that the "analyst made a reasonable decision ... based on her experience and the relevant information that was in the administrative record." *Id.* This vague reference to "experience" is not a "reasoned explanation for [the agency's] assumption." *Nat'l Gypsum Co. v. EPA*, 968 F.2d 40, 44 (D.C. Cir. 1992); *cf. U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1008 (D.C. Cir. 2002) ("When evaluating an agency's model, "[t]he principal question ... is whether the agenc[y's] explanation of the model's assumptions and methodology is reasonable"). The SBA points to nothing in the record to explain why it assumed that LCITE's 2010 draft financial statement had already discounted the revenue from its joint ventures, and the Court finds no adequate explanation in its own review.[3]

The SBA next argues that any error in its assumption is immaterial because "despite reducing the joint venture receipts, the SBA attorney still calculated a three year average well above the [$]33.5 million size standard." Def.'s Opp. at 14. As the Plaintiffs point out, however, "the attorney, after correctly calculating the 51% of [joint venture] revenues attributable to LCITE, made a different mathematical error that produced his erroneous conclusion." Pls'

---

[3] In its initial Size Determination Memorandum, the SBA noted that "[i]n reviewing the audited financial statement[] for year[] ended 2009," which was prepared by the same accounting firm as the draft 2010 statement, "Note 1 indicates that the 51% ownership percentage in all the joint ventures have been included." A.R. at 2-32. The SBA appears to have misread Note 1 to the 2009 financial statement, which, if anything, suggests the statement lists 100% rather than 51% of LCITE's joint venture revenue: "The accompanying consolidated financial statements include the accounts of the Company and its majority-owned and controlled limited liability companies .... The Company owns a 51% interest in the limited liability companies." *Id.* at 1-40. In its review of the Size Determination Memorandum, the OHA simply declared the SBA "took pains to include only [LCITE's] proportionate share of the joint venture receipts." *Id.* at 3-60.

Reply at 3.  Specifically, the SBA attorney neglected to subtract 100% of the joint venture revenue reported on LCITE's draft financial statement before adding 51% of that joint venture revenue back in.  *Id.* at 4.  Plaintiffs' contention is borne out by the fact that the total annual receipts for 2010 calculated by the attorney ($56 million) is higher than those calculated by the analyst ($46 million), despite the attorney's reduction of LCITE's joint venture revenue.  *Compare* A.R. at 2-10 (attorney's calculation) *with* A.R. at 2-6 (analyst's calculation).  For the purpose of determining whether the SBA's error was material, the Court credits Plaintiffs own calculation, which shows that discounting the joint venture revenue from LCITE's joint ventures would reduce Plaintiffs' combined three-year average annual receipts below the $33.5 million threshold.  Pls' Mem. ex. E., Dkt. 17-5.

The SBA argues, finally, that "[n]othing in the record indicates that SBA acted in bad faith or with improper motive."  Def.'s Opp. at 14–15.  This, however, is not the legal standard.  The record must show that the SBA "considered the relevant factors and explained the facts and policy concerns on which it relied, and [that] those facts have some basis in the record."  *Horner*, 854 F.2d at 498.  The SBA points to nothing in the record that explains why it assumed LCITE's joint venture receipts had already been discounted, and, aside from a single vague reference to its analyst's "experience," offers no explanation here.  Because the SBA has not "explained the facts," or, more precisely, the assumption "on which it relied," its size determination of LGC was arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706(2)(A).

      **C.**     **Attorney's Fees**

In their memorandum in support of their motion for summary judgment, Plaintiffs "request that the Court award them attorney[']s fees pursuant to the Equal Access to Justice

10

Act." Pls' Mem. at 24.  That request is premature.  Under the Act a prevailing party may submit an application for attorney's fees and costs "within thirty days of final judgment," 28 U.S.C. § 2412(d)(1)(B); a "final judgment" is one that is "final and not appealable," *id.* § 2412(d)(2)(G)). Plaintiffs may, if they wish, submit an application at the appropriate time.

### III.  CONCLUSION

For the foregoing reasons, it is, hereby,

1. **ORDERED** that Plaintiffs' motion for summary judgment is **GRANTED**.  It is further,

2. **ORDERED** that the decision of the SBA affirming the size determination of LGC, SBA No. SIZ-5337, is **VACATED**.  It is further,

3. **ORDERED** that the underlying SBA size determination memorandum, Case No. 3-2012-017, is **VACATED.**  It is further,

4. **ORDERED** that the SBA reopen and expeditiously process LGC's application for participation in the 8(a) Business Development Program.  It is further,

5. **ORDERED** that Plaintiff LCITE expeditiously provide any documents requested by the SBA in connection with LGC's application for participation in the 8(a) Business Development Program.  It is further,

6. **ORDERED** that Plaintiffs' request for attorney's fees is **DENIED** at this time.

**SO ORDERED**.

   July 24, 2013

*/s/ Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE